UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IN RE BAUSCH & LOMB INCORPORATED                DECISION & ORDER
SECURITIES LITIGATION
                                                06-CV-6294T

---

## PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated July 18, 2006, this consolidated securities class action litigation has been referred to this Court for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket # 39).

Currently before the Court are two competing motions for appointment as lead plaintiff and for approval of lead counsel. (Docket # 35-16; # 36-9). One has been filed by the Police and Fire Retirement System of the City of Detroit ("the Detroit Police & Fire Group") (Docket # 35-16), and the other has been filed by the Ironworkers St. Louis District Council Pension Fund and Structural Ironworkers Local # 1 Annuity, Pension and Welfare Funds (collectively, "the Pension & Welfare Group") (Docket # 36-9). Since the motions were argued, the Pension & Welfare Group filed a supplemental memorandum seeking to withdraw the joint application of both Ironworkers pension funds for appointment as lead plaintiff and seeking instead to appoint only Structural Ironworkers Location #1 Annuity, Pension and Welfare Fund (the "Structural Ironworkers Fund") as lead plaintiff. (Docket # 68).[1]

Defendants take no position on the pending motions.

---

[1] The change in application reflects the expectation of the other fund, the Ironworkers St. Louis District Council Pension Fund, that it would be moving for lead plaintiff status in several other class action securities litigations in the near future and would be "spread too thin" to actively prosecute this case. (Docket # 68 at 1).

**FACTUAL BACKGROUND**

To date, four separate class action complaints have been filed by various individuals and institutional investors against Bausch & Lomb, Inc. alleging securities fraud violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) (the "Securities Exchange Act"), and Rule 10b-5 promulgated thereunder.[2] These actions have been consolidated by stipulation and order, and the parties have further agreed that a consolidated complaint will be filed by the lead plaintiff following determination of the pending motions.  The actions, which are brought by investors who purchased Bausch & Lomb securities during the period January 27, 2005 through May 3, 2006 ("the Class Period"), allege that Bausch & Lomb and certain of its officers and directors violated the Securities Exchange Act by making false and misleading statements about the company's financial condition and operations, as well as the safety and efficacy of its contact lens solutions, while at the same time concealing or recklessly disregarding adverse material information about the same.

Plaintiffs also maintain that as a result of the allegedly false and misleading statements, Bausch & Lomb's stock traded at an artificially inflated level, and during that time various Bausch & Lomb officers and directors knowingly sold their own Bausch & Lomb securities for substantial profit.  In December 2005, Bausch & Lomb announced its intention to restate its financial statements for the preceding five-year period and later disclosed that a rare eye infection had been reported among users of its ReNu brand contact lens solution.  Following

---

[2] Certification to proceed as a class action has not been determined, as no motions for class certification have yet been filed.

those disclosures, the price of Bausch & Lomb securities dropped significantly, allegedly causing plaintiffs economic injury.

## DISCUSSION

The pending motions for appointment of lead plaintiff and approval of lead counsel are governed by the Private Securities Litigation Reform Act (hereinafter "the PSLRA"), which applies to "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Prior to the enactment of the PSLRA, lead plaintiff status in securities class actions was generally determined by which party first filed suit. This rule invariably resulted in a "race to the courthouse" in an effort by counsel to gain lead plaintiff status for their client. *See* H.R. Rep. No. 104-369 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 730; S. Rep. No. 104-98 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 679; *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998) (citing *Fischler v. AMSouth Bancorporation*, 1997 WL 118429, *1 (M.D. Fla. 1997)). Recognizing that the selection of the lead representative party should rest on considerations other than speed, Congress enacted the PSLRA in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Rep. No. 104-369; *see In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 294.

Under the PSLRA, the court is required to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of

adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The Act provides that a statutory, rebuttable presumption arises that the "most adequate plaintiff" is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion [for appointment as lead counsel];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rule of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see*, *e.g.*, *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 294. That presumption may be rebutted by another member of the purported class "only upon proof . . . that the presumptively most adequate plaintiff – (i) will not fairly and adequately protect the interests of the class; or (ii) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see*, *e.g.*, *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. at 323; *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 295-95.

In the case at bar, the Detroit Police & Fire Group and the Structural Ironworkers Fund have timely moved pursuant to the PSLRA to be appointed as lead plaintiff.[3] *See* 15 U.S.C.

---

[3] Two other motions for appointment as lead plaintiff were filed, one by plaintiffs Helen Sarnoff and Anne Dayton (Docket # 35-9) and the other by plaintiffs M.H. Kim and Jae R. Lee (Docket # 35-22). Shortly after filing their motion, plaintiffs Sarnoff and Dayton withdrew their motion. (Docket # 32). Similarly, in response to the motion submitted by the Detroit Police & Fire Group, plaintiffs Kim and Lee withdrew their motion, maintaining that the Detroit Police & Fire Group has the largest financial interest in this action and should be appointed as lead plaintiff. (Docket # 41).

Neither plaintiff group has sought to renew its motion following the Pension & Welfare Group's request to remove the Ironworkers St. Louis Fund from its application for appointment as lead plaintiff; nor has either plaintiff group otherwise responded to that application.

§ 78u-4(a)(3)(A)(i)(I-II). Each pension fund asserts that it has the greatest financial interest in this litigation and is otherwise qualified under Rule 23, and thus is the most adequate lead plaintiff.

**A. Financial Interest:**  Although the PSLRA identifies the plaintiff with the "largest financial interest" as the presumptive lead plaintiff (provided it satisfies the requirements under Rule 23), the statute does not define how a party's financial interest should be determined. In making that determination, courts within this Circuit commonly utilize a four-factor test that examines: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 295 (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. 1997)); *see, e.g.*, *Gesenhues v. Checchi*, 2006 WL 1169673, *2 (S.D.N.Y. 2006); *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, *1 (S.D.N.Y. 2005); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002). Both pension funds applying for lead plaintiff appointment in this case cite this test to maintain that they have the largest financial interest at stake in this litigation. (Docket # 35-20 at 5-8; # 36-11 at 1).

The Structural Ironworkers Fund asserts that during the Class Period, it purchased 3,900 shares of Bausch & Lomb common stock at a cost of $295,086 and suffered a loss of $71,326 on the sale of the same number of shares. Having sold all the shares it purchased during the Class Period, the net shares purchased amount to zero. (Docket # 36-13; # 36-14). The Detroit Police & Fire Group does not contest that calculation.

By contrast, the Detroit Police & Fire Group alleges that during the Class Period, it (1) purchased 13,200 shares of Bausch & Lomb common stock and $721,000 par value Bausch & Lomb convertible bonds; (2) purchased 2,200 net shares of Bausch & Lomb common stock and sold an aggregate $389,000 par value convertible bonds; (3) expended $323,449 in net funds (total expenditures offset by sale proceeds) to purchase the common stock and expended total funds of $2,076,074 to purchase Bausch & Lomb securities (common stock and debt securities); and (4) suffered losses of $263,084 employing a last-in, first-out ("LIFO") methodology.[4] (Docket # 35-18, Exs. D and E; # 35-20 at 5-8; # 48-1, Ex. A at ¶ 10(a) and Ex. B and Ex. C; Docket # 47 at 2). At the end of the Class Period, it continued to hold 4,400 shares of Bausch & Lomb stock, 2,200 of which had been purchased during the period. (Docket # 35-18 at Ex. E).

At first glance, it would appear that Detroit Police & Fire has the greater financial interest in this litigation. Considering only the transactions involving Bausch & Lomb common stock during the Class Period, Detroit Police & Fire claims a loss of $230,352 (Docket # 35-18), as compared to the $71,326 loss asserted by the Structural Ironworkers Fund. That analysis is incomplete, however, because it fails to properly account for its purchases and sales of debt securities during the Class Period. In addition to the shares of Bausch & Lomb common stock, Detroit Police & Fire also purchased $721,000 par value Bausch & Lomb convertible bonds at a cost of $1,008,429. (Docket # 35-18). During the same period, Detroit Police & Fire sold $1,110,000 par value convertible bonds, yielding total proceeds of $1,480,873 and net proceeds

---

[4] The loss calculated on a FIFO (first-in, first-out) basis is greater, but LIFO, not FIFO, is the preferred methodology in these determinations. *See, e.g., In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 n.3 (S.D.N.Y. 2005) ("[FIFO] has fallen out of favor in this District because of its tendency to overstate the losses of institutional investors and to understate gains made from stock during the class period"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("more recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities cases") (internal quotations omitted).

of $472,441.  (*Id.*).  Simply stated, Detroit Police & Fire sold more bonds than it purchased and generated more proceeds than it spent during the Class Period.  Under this analysis, Detroit Police & Fire arguably benefitted from the artificially inflated prices complained of in this lawsuit.

Detroit Police & Fire argues that its sales of debt securities should be disregarded because certain of the bonds were purchased prior to the Class Period at a cost higher than that for which they were sold during the Period.  Even so, the fact remains that Detroit Police & Fire sold more bonds than it purchased at allegedly inflated prices during the Class Period.  Thus, even if it ultimately suffered a loss, that loss was less than it would have been had the bonds been trading at fair market value.

Even when the Class Period transactions involving Bausch & Lomb common stock are combined with those involving bonds, Detroit Police & Fire still gained more from the sales of those securities than it spent to acquire them.  Because Detroit Police & Fire received more proceeds from the sales of Bausch & Lomb securities than it expended during the Class Period (the third *Olsten* factor), Detroit Police & Fire is actually a "net gainer," as well as being a "net seller" (the second *Olsten* factor).  Courts have consistently rejected applications for lead plaintiff status made by "net sellers" and "net gainers," recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.  *See*, *e.g.*, *Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) ("Because parties which are net sellers and net gainers, with respect to the relevant securities transactions during the class period, may have more trouble proving damages at trial, courts frequently reject their applications to serve as lead plaintiffs"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005)

(finding applicant for lead plaintiff status subject to unique defenses because two of its constituent funds experienced net gains during class period); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, *4 (N.D. Ohio 2004) (rejecting institutional funds application to serve as lead plaintiff where funds had net sales, and net proceeds from those sales, during class period); *Weisz v. Calpine Corp.*, 2002 WL 32818827, *7 (N.D. Cal. 2002) (removing from consideration applicant for lead plaintiff that had sold more shares than it purchased during class period because it was "apparent that [applicant] may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (plaintiff who sold more shares than it purchased during class period was "totally out of the running for designation as lead plaintiff"); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) ("a net purchaser will, presumably have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed[;] [b]y contrast a net seller has arguably *profited* more from the fraud than it has been injured, possibly reducing its incentive to litigate"). Even Detroit Police & Fire acknowledges that a net seller should not serve as lead plaintiff because "a net seller may be deemed to have benefitted from the fraud." (Docket # 35-20 at 6).

I agree with the rationale of those courts finding that net sellers and net gainers, such as Detroit Police & Fire, are ill-suited to serve as lead plaintiffs. If nothing else, its status as a net gainer may "subject [it] to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Having found that Detroit Police & Fire should be removed from consideration, the Structural Ironworkers Fund has the largest financial interest and is therefore presumptively the most adequate lead plaintiff.[5]

**B. Structural Ironworkers Fund Satisfies the Requirement of Rule 23:** This Court now turns to the question of whether the Structural Ironworks Fund otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Rule 23 sets forth four prerequisites that a party must satisfy to serve as a class representative: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Only two of these factors – typicality and adequacy – are relevant to a motion for appointment as lead plaintiff. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("The moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met") (citing *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, *4 (S.D.N.Y. 2002); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296. Indeed, "a 'wide ranging analysis under Rule 23 is not appropriate' at this initial stage of the litigation 'and should be left for consideration of a motion for class certification.'" *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. at 252 (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)).

The typicality requirement is satisfied if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed*,

---

[5] Detroit Police & Fire argues that plaintiffs Kim & Lee have a larger financial interest when the Ironworkers St. Louis Fund is disregarded. (Docket # 71 at 1). Although this may be true, they have withdrawn their motion for appointment as lead counsel.

506 U.S. 1088 (1993). The claims of the representative party need not, however, be identical to those of all class members in order to be considered typical. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. at 253; *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013 at *5. The adequacy requirement demands that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the court must consider whether class counsel is "qualified, experienced and generally able to conduct the litigation" and whether the proposed lead plaintiff has interests that are antagonistic to those of other class members. *In re Drexel Burnham Lambert*, 960 F.2d at 291 (internal quotation omitted); *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968); *Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000).

Here, the Structural Ironworkers Fund, like each of the other plaintiffs and potential class members in this litigation, seeks to hold Bausch & Lomb liable for the consequences of its alleged violations of the federal securities laws. The course of events giving rise to the Structural Ironworkers Fund's claims is the same course of events giving rise to the claims of other class members. Examination of the four complaints that thus far comprise this consolidated action, as well as the two motions for appointment of lead counsel that have been withdrawn, reveal the reliance by all named plaintiffs and class members, including the Structural Ironworkers Fund, on similar legal theories in support of their securities claims against Bausch & Lomb. Finally, all allege economic injury from the same purported wrongdoing.

Moreover, the Structural Ironworkers Fund, a large public pension fund with 3,600 members and $505 million in assets (Docket # 49-2 at ¶3), is a sophisticated institutional investor and appears well-suited to serve as a lead plaintiff in a securities class action. *See In re*

*Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one"); *Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 315-16 (S.D.N.Y. 2005) (noting that purpose of PLRA is to attract institutional investors). Finally, as discussed below, I find that the Structural Ironworkers Fund is represented by competent, experienced counsel which appears more than able to prosecute this litigation. For these reasons, I conclude that the Structural Ironworkers Fund has satisfied the requirements of Federal Rule 23.

  **C. Presumption is Not Rebutted:** As previously noted, the most adequate lead plaintiff presumption may be rebutted by another member of the purported class upon proof that the presumptive lead plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). I find nothing in the record to question the Structural Ironworkers Fund's ability to adequately represent the class.[6] Accordingly, I find that the Structural Ironworkers Fund is the most adequate lead plaintiff for this litigation.

  **D. Selection of Lead Counsel:** The PSLRA permits the most adequate plaintiff to "select and retain counsel to represent the class," subject to approval by the court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Structural Ironworkers Fund has selected and retained the law firm of Lerach, Coughlin, Stoia, Geller, Rudman and Robbins LLP ("Lerach Coughlin"), a firm specializing in securities class actions. Having reviewed the firm's resume, the pleadings in this

---

[6] The Pension & Welfare Group's reply papers adequately address the concern raised by Detroit Police & Fire whether the individual who signed the certification on behalf of the Structural Ironworkers Fund was authorized to act on behalf of the fund. (*See* Docket # 49-2).

action and the papers submitted in connection with these motions, I find that it is qualified to represent the class members in this securities litigation. Lerach Coughlin has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions and is otherwise well-qualified and free of conflicts.[7] *See*, *e.g.*, *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 21 (D.D.C. 2006) (appointing Lerach Coughlin as lead counsel in securities class action); *Vanamringe v. Royal Group Tech. Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006) (finding Lerach Coughlin to be competent and experienced and appointing it co-lead counsel); *Tyler v. AstraZeneca, PLC*, 2006 WL 399483, *2 (S.D.N.Y. 2006) (appointing Lerach Coughlin as lead counsel upon finding that firm possesses "extensive experience litigating securities class actions" and "has successfully prosecuted complex securities fraud class actions in both state and federal court"). I therefore appoint Lerach, Coughlin, Stoia, Geller, Rudman and Robbins LLP as lead counsel.

---

[7] In correspondence recently submitted to this Court, Detroit Police & Fire alleges that the Lerach Coughlin firm should be disqualified as lead counsel because it also represents plaintiffs in another pending matter in New York State Supreme Court, Monroe County, *Palmer v. Warburg Pincus LLP, et. al.*, 2007-006634. According to Detroit Police & Fire, the plaintiffs in that case seek to represent a class consisting of the current stockholders of Bausch & Lomb and seek injunctive relief for alleged breaches of fiduciary duty in the negotiation of a merger agreement between Bausch & Lomb and Warburg Pincus. Although the *Palmer* action does not name Bausch & Lomb as a defendant, Detroit Police & Fire asserts that it will likely be consolidated with two other actions, *First Derivative Traders L.P. v. Zarrella, et. al.* and *Gottlieb v. Bausch & Lomb et. al.*, both of which name Bausch & Lomb as defendants. If such a consolidation were to occur, Detroit Police & Fire argues that a conflict of interest would arise disqualifying the Lerach Coughlin firm because it would then represent two classes of plaintiffs in matters against the same defendant. Without reaching the merits of the potential conflict of interest posited by Detroit Police & Fire, it is premature to address such a concern at this time. If the pending state court matters are in fact consolidated, and if Lerach Coughlin remains involved in the consolidated case, the issue of a conflict of interest may of course be addressed at that time.

**CONCLUSION**

For the foregoing reasons, it is the Decision and Order of this Court that the motion filed by the Structural Ironworkers Local # 1 Annuity, Pension and Welfare Funds for appointment as lead plaintiff and approval of lead counsel **(Docket # 36-9)** is **GRANTED**. The motion for similar relief filed by the Police and Fire Retirement System of the City of Detroit **(Docket # 35-16)** is **DENIED**.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　*s/Marian W. Payson*
　　　　　　　　　　　　　　　　　　　　　　　　　　MARIAN W. PAYSON
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated: Rochester, New York
　　　　July  13 , 2007